**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JACK ERVAN III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 25 C 2569** |
| | ) | |
| UPGRADE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| JACK ERVAN III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 25 C 2581** |
| | ) | |
| UPGRADE, INC., VELOCITY | ) | |
| INVESTMENTS, LLC, and | ) | |
| CROSS RIVER BANK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In two separate lawsuits, Jack Ervan has sued Upgrade, Inc., Velocity

Investments, LLC, and Cross River Bank alleging that they violated various consumer

protection laws by inaccurately reporting information to credit reporting agencies related

to a personal credit line he obtained in 2021. The defendants have moved for summary

judgment.

For the reasons stated below, the Court grants the motions for summary

judgment.

**Background**

Upgrade operates a financial services marketplace where borrowers can obtain financial products from national and state-chartered banks with Upgrade acting as a servicer for the resulting accounts. On October 24, 2021, Ervan entered into a personal credit line agreement provided by Cross River and serviced by Upgrade. Ervan was approved for a total credit limit of $3,000.

A personal credit line with Cross River does not function as a standard revolving credit card but instead is a series of close-end loans. Any charges and draws made towards a private credit line account in a specific period are grouped together into individual loans (known as sublines). A Truth in Lending (TIL) disclosure is issued for each subline. Upgrade may furnish credit reporting information for customers' accounts to credit reporting agencies.

After opening the account, Ervan engaged in several transactions that were grouped together into individual sublines. Relevant here, Ervan made a $1,000 cash advance transaction on October 28, 2021 and another $1,000 cash advance transaction on November 1, 2021. These transactions were grouped together into one subline, and Upgrade issued a TIL disclosure showing that Ervan financed $2,000 at an APR of 29.48 percent, and his finance charge was $1,080.38. The total balance on the subline was $3,080.38.

Ervan did not pay off the balance owed on his Upgrade account and fell behind on his payment obligations. Upgrade's records reflect that Ervan's account was charged off on August 18, 2022, with an outstanding balance of $2,998.92. Upgrade

2

sold Ervan's account to Velocity—a debt collection agency—in September 2022.[1]

Ervan has filed two lawsuits based on Upgrade's reporting to credit reporting agencies of information that he alleges was inaccurate. In his first case, Ervan asserts three claims against Upgrade: (1) violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(b); (2) violation of the FCRA, 15 U.S.C. § 1681i(a); and (3) violation of IRS reporting requirements for failure to issue him a Form 1099-C. In his second case, Ervan asserts six claims based on the same set of facts: (1) violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(b) (against Upgrade, Velocity, and Cross River); (2) violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692e and 1692g (against Velocity); (3) violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 (against Cross River); (4) violation of IRS reporting requirements for failure to issue a Form 1099-C (against Upgrade and Cross River); (5) violation of the Illinois Collection Agency Act (ICAA), 205 ILCS 740 (against Velocity); and (6) common law fraud (against Upgrade and Cross River). Upgrade, Velocity and Cross River have moved for summary judgment.

## Discussion

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears

---

[1] Velocity's counsel notes in its reply that counsel incorrectly stated in its opening motion that it acquired his debt in October 2021.

3

the burden of proving the absence of such a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court ruling on a motion for summary judgment construes all facts and reasonable inferences the light most favorable to the nonmoving party, in this case Ervan. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). Because Ervan is a pro se plaintiff, the Court will construe his responses liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed.") (internal quotation marks omitted).

## A.    Ervan's failure to respond

Upgrade and Cross River argue that Ervan's failure to respond to arguments related to failure to issue a Form 1099-C, TILA, and common law fraud implies concession of these arguments. It is true that the Seventh Circuit has found that a party's failure to respond to an opposing party's argument implies concession and waiver. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). But the court has also stated that the failure to respond to an argument "is not a basis for automatically granting summary judgment as some kind of sanction." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). "Even where a nonmovant fails to respond to a motion for summary judgment, the movant still [has] to show that summary judgment [is] proper given the undisputed facts, with those facts taken as usual in the light most favorable to the nonmovant." *Id.* The Court thus evaluates all of the parties' arguments below to determine if summary judgment is appropriate.

## B.    Fair Credit Reporting Act (Upgrade, Velocity, and Cross River)

Ervan brings two claims under the FCRA against Upgrade under 15 U.S.C. §§ 1681s-2(b) and 1681i(a) and one claim against Upgrade, Velocity, and Cross River

under 15 U.S.C. §§ 1681s-2(b).  Sections 1681s-2(b) and 1681i(a) both require a credit reporting agency to notify the furnisher of information of a dispute submitted by a consumer.  Section 1681s-2(b) imposes duties on the furnisher to investigate the dispute; section 1681i(a) imposes duties on the credit reporting agency.  Because Upgrade is the furnisher of information, not the credit reporting agency, and all of these claims are based on allegedly inaccurate reporting by a furnisher, the Court will address them based on section 1681s-2(b).

Section 1681s-2(b) establishes the duties of information furnishers upon notice of a dispute with a credit reporting agency.  After a credit reporting agency notifies an information furnisher of a dispute,

> the furnisher of information must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided to it by the consumer reporting agency; (3) report the results of the investigation to the agency; and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information.

*Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).  Section 1681s-2(b) has two threshold requirements: "a prima facie showing that the data furnisher provided incomplete or inaccurate information" and "the incompleteness or inaccuracy was the product of an unreasonable investigation[.]"  *Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 775 (7th Cir. 2023).  To show incompleteness or inaccuracy, a plaintiff must show that "the information the data furnisher provided was (1) patently incorrect, or (2) materially misleading, including by omission."  *Id.* at 776.  "Materially misleading" means "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."  *Id.*  "Whether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary

judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Westra*, 409 F.3d at 827.

When notified of a dispute, a credit reporting agency transmits an Automated Consumer Dispute Verification (ACDV) form to an information furnisher like Upgrade. *Frazier*, 72 F.4th at 773. "The ACDV form presents the furnisher with account payment data the credit reporting agency currently possesses and the relevant data items the consumer disputes." *Id.* The furnisher must investigate and "correct or verify the information by returning the ACDV form to the credit reporting agency with any amended or verified data inserted next to the old data." *Id.*

### 1. Upgrade

Upgrade argues that Ervan's FCRA claims are time-barred because the last time it furnished information on his account to the credit reporting agencies was September 2022. Ervan responds that Upgrade responded to an ACDV from a credit reporting agency three times in 2024 and once in 2025.

Section 1681s-2(b) imposes certain duties on furnishers upon notice of a dispute. 15 U.S.C. § 1681s-2(b). Upgrade does not dispute that it responded to disputes from the credit reporting agencies about Ervan's account in 2024 and 2025. Each of these disputes triggered a duty to investigate and thus may constitute an independent violation. Thus any claim related to Upgrade's September 2022 furnishing is time-barred. To the extent Ervan's claims are based on Upgrade's 2024 and 2025 ACDV responses, however, the claims may proceed.

That does not save Ervan's claims. Upgrade next argues that Ervan fails to point to any inaccurate or materially misleading information that Upgrade furnished to a credit

reporting agency.  Ervan responds that genuine disputes exist regarding transfer and reporting authority for his account as well as account lifecycle data.

Upgrade contends that Ervan is attempting to add new facts that conflict with his deposition testimony.  Specifically, Ervan testified at his deposition that he was unaware of any inaccurate information that Upgrade furnished to credit reporting agencies and that he had no information about how Upgrade's investigation was unreasonable. Although it is true that a party may not create an issue of fact by contradicting prior deposition testimony through affidavits, Ervan does not attempt to do so.  *Kopplin v. Wisconsin Cent. Ltd.*, 914 F.3d 1099, 1102 (7th Cir. 2019).  Instead, Ervan points to documents Upgrade itself produced in discovery to support his arguments.  The Court will consider these arguments and the documents Ervan references.

Still, Ervan has failed to point to evidence that shows there is a material factual dispute on his FCRA claims against Upgrade.  Ervan contends that a genuine dispute exists related to the accuracy of the information Upgrade provided in its ACDV responses because there is a dispute regarding the date the account was opened, the last payment date, the date the account was closed, and the date of first delinquency. Upgrade responds that he has not proven any of this information was incorrect.[2]

Ervan argues that there is a dispute about the date the account was opened because the ACDV responses state that the account was opened on October 26, 2021 but Upgrade's declaration states that the agreement for the account was executed on

---

[2] Upgrade also argues that a report must contain "material omissions" to be inaccurate. Upgrade Reply at 7.  This is incorrect.  As discussed, information provided by a furnisher is incomplete or inaccurate under the FCRA, if it is "(1) patently incorrect, or (2) materially misleading, including by omission."  *Frazier*, 72 F.4th at 776.

October 24, 2021. Upgrade explains that an account is not necessarily opened the same date that an account agreement is executed. Ervan does not cite any evidence to dispute this. On the record before the Court, a reasonable jury could not find that the "account opened" date was patently incorrect simply because the account agreement was executed two days before the reported "account opened" date.

Ervan also argues that the last payment date is incorrect because the ACDV responses state that his last payment was March 18, 2022 but, according to him, another payment on the account was made on June 19, 2022. But the June 19, 2022, "payment" was a rewards credit applied to his account. Ervan cites no evidence that Upgrade considered rewards credits as a "payment" on the account. This does not give rise to a genuine factual dispute about the accuracy of the last payment date that Upgrade reported.

Ervan contends that the account closed date is incorrect because his initial credit report stated that his Upgrade account was closed on August 31, 2022, but Upgrade's ACDV responses state that the account was closed on September 23, 2022. As best the Court can tell from the ACDV responses, it appears that Upgrade's ACDV responses do state that Ervan's account was closed September 23, 2022 rather than August 31, 2022 (as initially stated on the credit report). Upgrade's L.R. 56.1 Stmt., Ex. 7.

The fact that Upgrade provided updated information in its ACDV response does not create a genuine dispute regarding the accuracy of the updated information. The FCRA expressly provides for a furnisher to provide corrected information in the event of a dispute. 15 U.S.C. § 1681s-2(b). It appears that is what Upgrade did when it

provided updated information in its ACDV responses to reflect that the account was closed on September 23, 2022, the same date the account was sold to Velocity.

Ervan finally argues that there is a factual dispute related to the date of first delinquency because Upgrade's responses to the ACDVs state that the first date of delinquency was May 18, 2022, but a declaration Upgrade submitted states Ervan's last payment was March 18, 2022. He also argues that the ACDV responses reflect conflicting data for the date of first delinquency. Based on the Court's review of the ACDV responses, Upgrade consistently reported that the date of first delinquency was May 18, 2022. The fact that the last payment date is different from the date of first delinquency does not indicate that either date is inaccurate. Rather, it makes sense that the date of first delinquency would occur after Ervan's last payment date.

Because no reasonable jury could find that the information Upgrade reported is patently incorrect, the next question is whether it was "materially misleading." Ervan does not argue that the potential "inaccuracies" discussed above would adversely affect credit decisions. If made, this argument would lack merit. Ervan takes issue with basic dates that various actions occurred on his account. There is no viable basis to believe that any of these dates would adversely affect credit decisions. The Court concludes that no reasonable jury could find for Ervan on his FCRA claims against Upgrade.[3]

---

[3] Ervan argues briefly that "[w]hether Upgrade retained reporting authority, acted as an agent, or continued furnishing after the alleged transfer [of his account to Velocity] presents a triable issue inappropriate for resolution on summary judgment." Pl.'s Resp. to Upgrade, 25 C 2581, dkt. no. 123, at 3. Any dispute about "retention of reporting authority" is not relevant to the Court's analysis. Under the FCRA, a furnisher has a duty to investigate after it receives notice of a dispute. 15 U.S.C. § 1681s-2(b). Upgrade received notice of Ervan's disputes, investigated, and responded.

9

### 2.     Velocity

Velocity argues that it is not a furnisher of Ervan's information and thus cannot be liable for an FCRA violation.  Ervan responds that Upgrade's confirmation of the sale of his Upgrade account to Velocity "create[s] a genuine dispute regarding reporting authority, control, and responsibility for accuracy."  Pl.'s Resp. to Velocity, 25 C 2581, dkt. no. 120, at 4.

The FCRA imposes on furnishers of information a duty to provide accurate information and to correct and update information upon notice of a dispute.  15 U.S.C. § 1681s-2; *Westra*, 409 F.3d at 827.  Ervan does not contend that Velocity is a furnisher. He also cites no case law in support of his argument that Velocity is somehow responsible for Upgrade's response to a dispute because Velocity purchased the debt, and the Court has found none.  Furthermore, as discussed, Ervan points to no evidence that would permit a reasonable jury to find that Upgrade's responses to the 2024 and 2025 disputes violated the FCRA.

Ervan also argues that "Velocity's motion depends on the assertion that it lawfully acquired [Ervan's] account."  Pl.'s Resp., dkt. no. 120, at 2.  But Ervan does not explain why he believes that any alleged inconsistency regarding the timing of charge-off and acquisition of the debt impacts his claims.  Even construing Ervan's filing liberally, the Court is unable to determine how this argument has any bearing on Velocity's motion for summary judgment.

Finally, Ervan argues that Velocity, as a debt buyer, must establish ownership of the account to obtain summary judgment.  This argument may be pertinent if a debt buyer is seeking to collect a debt, but it has no bearing on Ervan's claims here.

10

### 3. Cross River

Cross River argues that Ervan "has not provided any evidence that Cross River furnished any information to the credit reporting agencies." Cross River Mem. ISO Mot., 25 C 2581, dkt. no. 109, at 4. Ervan does not cite any evidence to the contrary. Ervan instead contends that Cross River "provides no evidence demonstrating that it lacked authority to control or oversee" Upgrade's reporting at the time of the 2024 and 2025 verifications. Pl.'s Resp. to Cross River, 25 C 2581, dkt. no. 127, at 3. Ervan also argues that Cross River must have "retained downstream control, authorized continued reporting, or failed to clearly extinguish reporting authority." *Id.* at 4. But he cites no evidence to support this contention.

The duty to investigate a dispute under the FCRA attaches when a furnisher receives notice of a dispute. Ervan cites no case law—and the Court has found none— that supports Ervan's contention that Cross River may be liable for FCRA violations based on a theory of agency or vicarious liability. And even if Cross River had some duty to control or oversee Upgrade's reporting, Ervan has pointed to no evidence that would permit a reasonable jury to find in his favor on his FCRA claims.

In sum, the Court concludes that no reasonable jury could find in Ervan's favor on his FCRA claims against Upgrade, Velocity, or Cross River. The defendants are entitled to summary judgment on those claims.

## C. Failure to issue a Form 1099-C (Upgrade and Cross River)

Ervan contends that the "charge off" of his account required Upgrade and Cross River to issue him an IRS Form 1099-C (Cancellation of Debt). This represents a basic misunderstanding of the meaning of the term "charge off." A creditor's charging off of a

debt does not amount to forgiveness of the debt. Rather, a charge off involves a creditor "treat[ing] (an account receivable) as a loss or expense because payment is unlikely[.]" Charge Off, Black's Law Dictionary (12th ed. 2024); Write Off, Black's Law Dictionary (12th ed. 2024) ("To transfer the entire balance (of an asset account) to an expense or loss account to reflect the asset's total loss of value[.]"); *see United States v. S. Holland Tr. & Sav. Bank*, No. 93 C 2653, 1994 WL 695572, at *2 (N.D. Ill. Dec. 9, 1994) (quoting the affidavit of a bank vice president who explained that a charge off or write off is a "procedure by which a bank removes the total, or a portion of, the amount due under a loan from the asset portion of its balance sheet . . . [which] does not constitute a forgiveness of debt and in no way affects a bank's right to enforce a debt obligation or a borrower's obligation to pay a debt"); *Kelly v. Wolpoff & Abramson, L.L.P.*, 634 F. Supp. 2d 1202, 1208, 1210 (D. Colo. 2008) (describing a charge off as "a ledger book reclassification" and citing cases differentiating discharged debt from charged off debt).

By contrast, an IRS Form 1099-C must be issued when a debt over $600 is discharged, or in other words, cancelled or forgiven—not simply removed from the asset category on a bank's balance sheet. "When a bank forgives a debt, it must send both the Internal Revenue Service and the debtor an IRS Form 1099 reporting the cancelled debt." *PNC Bank, Nat'l Ass'n v. Boytor*, 109 F.4th 495, 502 n.5 (7th Cir. 2024); see 26 U.S.C. § 6050P (governing Form 1099-C). Ervan is just plain wrong in contending that a charged off debt, which has not been discharged or forgiven, requires issuance of Form 1099-C. No reasonable jury could find in his favor on these claims.

**D.      Truth in Lending Act (Cross River)**

TILA requires accurate disclosures for certain consumer credit transactions, as

set forth in the statute and related regulations. *Rendler v. Corus Bank*, 272 F.3d 992, 996 (7th Cir. 2001).

Ervan broadly claims that Cross River violated TILA, 15 U.S.C. § 1601, based on the disclosed principal amount, final repayment amount, and resulting charge-off amount. Cross River argues that Ervan has not put forth any evidence or explanation regarding what disclosures it was required to make but did not. Cross River also points out that Ervan has failed to allege or explain what provisions of TILA he asserts Cross River violated. Ervan does not respond to Cross River's argument. As Cross River notes, Ervan's failure to respond to the argument constitutes a concession that he has not identified any disclosures that Cross River was required to make but did not. Without any evidence that Cross River failed to make a disclosure as required under TILA, no reasonable jury could find in Ervan's favor on his TILA claim.

Even if Ervan presented evidence in support of his TILA claim, it would be barred by the statute of limitations. A claim under TILA must be brought within one year of the violation. 15 U.S.C. § 1640(e). The relevant transactions occurred in October and December 2021 as well as April 2022—when Ervan withdrew funds. Ervan did not file this lawsuit until March 2025—almost three years later.

### E. Fair Debt Collection Practices Act (Velocity)

Velocity argues that it did not send a communication "in connection with the collection of any debt" as required for Ervan to succeed on his FDCPA claim. Velocity Mem. ISO Mot., 25 C 2581, dkt. no. 115, at 4-5 (quoting 15 U.S.C. §§ 1692e and 1692g(a)). Ervan responds that Velocity stated that an initial demand letter was sent to him on March 12, 2023 and that this constitutes collection activity. Ervan does not cite

evidence of the letter itself but instead points to Velocity's reference to the letter in its response to Ervan's Consumer Financial Protection Bureau complaint. Velocity contends that the letter was sent by a prior debt collector on behalf of Velocity and thus does not constitute collection activity by Velocity.

Even if the Court determined that Ervan presented evidence permitting a finding that Velocity sent a March 2023 letter and that letter constituted collection activity, Ervan's FDCPA claim is time-barred. The FDCPA requires that a claim for violation be brought within one year of the violation. 15 U.S.C. § 1692k(d). Ervan did not file this lawsuit until March 2025, about two years after the purported letter he cites.

**F.     Illinois Credit Agency Act (Velocity)**

Velocity argues that it is entitled to summary judgment on Ervan's claim under the ICAA because Ervan has produced no evidence that it did not maintain a license during the relevant time. Ervan contends that a genuine dispute exists regarding whether Velocity was licensed at the time of the alleged collection activity because a 2024 license reflects a change in ownership and another license includes an effective date of March 24, 2025.

Under the ICAA, "[n]o collection agency shall operate in this State, directly or indirectly engage in the business of collecting debt, solicit debt claims for others, have a sales office, a client, or solicit a client in this State, exercise the right to collect, or receive payment for another of any debt" without a valid license. 205 ILCS 740/4.

Velocity has presented evidence that it held Illinois collection agency licenses at all times relevant to Ervan's claims. Ervan does not contend that these past licenses are invalid or otherwise flawed. His reliance on a reference to a change in ownership

14

and a later effective date on a single license cannot support a claim that Velocity was not licensed during the relevant time.  The Court concludes that no reasonable jury could find for Ervan on his ICAA claim against Velocity.

## G.    Common law fraud

Upgrade and Cross River argue that Ervan has failed to produce any evidence in discovery that meets the elements of a common law fraud claim under Illinois law. Ervan has not responded to these arguments.

To succeed on a common law fraud claim under Illinois law, a plaintiff must prove:  (1) a false statement of material fact; (2) defendant's knowledge of falsity; (3) defendant's intent to induce the plaintiff to act; (4) plaintiff's reasonable reliance; and (5) damages.  *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013) (applying Illinois law).

During his deposition, Ervan was unable to identify any false statement made by Upgrade or Cross River.  To the extent he relies on information in his credit report or the ACDV responses, Upgrade and Cross River are correct that any such claim is preempted by the FCRA, 15 U.S.C. § 1681t(b).  *See Aleshire v. Harris, N.A.*, 586 F. App'x 668, 671 (7th Cir. 2013).  Thus Upgrade and Cross River are entitled to summary judgment on Ervan's common law fraud claim.

### Conclusion

For the reasons stated above, the Court grants Upgrade's motion for summary judgment on all claims in both cases, [25 C 2569, dkt. no. 54; 25 C 2581, dkt. no. 111], Velocity's motion for summary judgment [25 C 2581, dkt. no. 114], and Cross River's motion for summary judgment [25 C 2581, dkt. no. 108].  The Clerk is directed to enter

15

judgment in case number 25 C 2569 stating:  Judgment is entered in favor of defendant

Upgrade Inc. and against plaintiff Jack Ervan III.  The Clerk is directed to enter

judgment in case number 25 C 2581 stating:  Judgment is entered in favor of

defendants Upgrade Inc., Velocity Investments, LLC, and Cross River Bank and against

plaintiff Jack Ervan III.

Date:  May 15, 2026

_____
MATTHEW F. KENNELLY
United States District Judge

16